IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MAURICE DOSSO :
:
:
v. : Civil Action No. CCB-10-1703
:
UNITED STATES POSTAL SERVICE :
:

...o0o...

## MEMORANDUM

Maurice Dosso, who is representing himself, has sued the United States Postal Service ("USPS" or "Postal Service") for breach of contract. He seeks insurance indemnification for the loss of a package sent internationally by Express Mail. Dosso claims that he shipped a laptop computer to Abidjan, Cote D'Ivoire in West Africa, and the computer never arrived. The USPS has moved to dismiss or, in the alternative, for summary judgment, on the grounds that the plaintiff has failed to exhaust his administrative remedies. For the reasons that follow, the defendant's motion to dismiss will be granted.

## BACKGROUND

On August 3, 2009, Mr. Dosso sent a package via Express Mail International, a service of the Postal Service, from a USPS location in Landover, Maryland to an address in Cote d'Ivoire. (Declaration of Cheryl L. Woody ("Woody Decl.") ¶6, Def.'s Mem. Ex. 1.) The package was article number CP090277320US, weighing 9 lb. 8.2 oz. (*Id.* ¶¶5-6.) According to Mr. Dosso, the package contained a "brand new HP laptop computer." (Declaration of Maurice Dosso ("Dosso Decl.") ¶2.) Dosso paid $64.50 in postage, as well as $12.40 for merchandise insurance, which provided up to $1000 in coverage. (Woody Decl. ¶6.)[1]

---

[1] On the same date, Mr. Dosso sent a second package to Cote d'Ivoire. (Dosso Decl. ¶2.) That package arrived at its destination (*id.*), and thus Mr. Dosso is not claiming indemnification for that package.

1

Express Mail customer receipts, such as the one Mr. Dosso would have received when he sent the package via Express Mail, include the following information in the section entitled "Insurance Coverage":

> Insurance is proved *only in accordance with postal regulations in the Domestic Mail Manual (DMM) and for international shipments, the International Mail Manual (IMM)*. The DMM and IMM set forth the specific types of losses that are covered, the limitations on coverage, terms of insurance, conditions of payment, and adjudication procedures. Copies of the DMM and IMM are available for inspection at any post office and online at pe.usps.gov. If copies are not available and information on Express Mail insurance is requested, contact postmaster prior to mailing. The DMM and the IMM consist of federal regulations, and USPS personnel are NOT authorized to change or waive these regulations or grant exceptions. Limitations prescribed in the DMM and IMM provide, in part, that: . . .
>
> > - For international Express Mail shipments, insurance coverage may vary by country and may not be available to some countries. Indemnity is not paid for items containing coins, banknotes, currency notes (paper money); securities of any kind payable to the bearer; traveler's checks; platinum, gold, and silver, (manufactured or not); precious stones, jewelry, and other valuable or prohibited articles. . . .
> >
> > - No coverage is provided for consequential losses due to loss, damage, or delay of Express Mail, or for concealed damage, spoilage of perishable items, and articles improperly packaged or too fragile to withstand normal handling in the mail.

(Express Mail Receipt, Woody Decl. Ex. C.)

On or about August 22, 2009, Mr. Dosso contacted the Postal Service's International Express Mail Inquiry Center, via its toll-free 800 number, and initiated an inquiry concerning the package. (*Id.* ¶7.) He alleged that the package contained a laptop computer, and that the package did not arrive at its destination in Cote d'Ivoire. (*Id.*) By letter dated February 18, 2009, the Postal Service sent a notice to Mr. Dosso that his claim could not be processed until he provided "Evidence of Value" in the form of "a dated sales receipt, invoice, credit card statement or proof of completed internet payment transaction." (Feb. 18, 2010 letter, Woody Decl. Ex. B.) The letter stated, "In this case, you indicated you do not have the original purchase receipt.

2

Please provide a website print out of the kind of computers showing value, with a signed statement indicating reason for non receipt." (*Id.*) Thus the Postal Service did not insist on the original receipt for the actual computer Mr. Dosso shipped, which he believes he lost when he moved from Landover, Maryland to Hagerstown, Maryland (Pl.'s Opp'n at 2), but rather explained that "a website print out of the kind of computer[]" that was lost (Feb. 18, 2010 letter) would suffice. Mr. Dosso did not respond to the February 18 letter. (Woody Decl. ¶7.) Accounting Services then suspended the adjudication of Mr. Dosso's claim. (*Id.*)

## ANALYSIS

When a party seeks judicial review of an agency decision, the party is generally required to "exhaust prescribed administrative remedies before seeking relief from the federal courts." *Volvo GM Heavy Truck Corp. v. U.S. Dept. of Labor*, 118 F.3d 205, 209 (4th Cir. 1997). Non-jurisdictional exhaustion, the type of exhaustion at issue here, "serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." *Id.* (citing *McCarthy v. Madigan*, 503 U.S. 140, 144-45 (1992).)[2] The exhaustion requirement "provides an agency with an opportunity to correct its own mistakes with respect to programs it administers before it is haled into federal court" and also "serves to prevent piecemeal appeals." *Id.* (internal quotation marks and citations omitted).

A plaintiff challenging an agency's actions is excused from exhausting such remedies only "if the litigant's interests in immediate judicial review outweigh the government's interests in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further." *McCarthy*, 503 U.S. at 146; *see also Volvo GM Heavy Truck Corp.*, 118 F.3d at 209 ("In

---

[2] Jurisdictional exhaustion, in contrast, arises "when Congress requires resort to the administrative process as a predicate to judicial review." *Avocados Plus Inc. v. Veneman*, 370 F.3d 1243, 1247 (D.C. Cir. 2004). The Postal Service has not contended that a statute precludes review here. Therefore, non-jurisdictional exhaustion is the applicable doctrine.

determining whether exhaustion is required, federal courts must balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion.")  Courts have excused plaintiffs from exhausting administrative remedies where, for example, (1) there are "no facts in dispute," *Avocados Plus*, 370 F.3d at 1247 (citing *McKart v. United States*, 395 U.S. 185, 198 n.15 (1969)); (2) "the disputed issue [is] outside the agency's expertise," *id.* (citing *McKart*, 395 U.S. at 197-98); (3) "the agency may not have the authority to change its decision in a way that would satisfy the challenger's objections," *id.* (citing *McCarthy*, 503 U.S. at 147-48); (4) "requiring resort to the administrative process may prejudice the litigants' court action," *id.* (citing *McCarthy*, 503 U.S. at 146-47); or (5) the administrative process "may be inadequate because of agency bias." *Id.* (citing *McCarthy*, 503 U.S. at 148-49).

The USPS's regulations are set forth in its Domestic Mail Manual ("DMM") and its International Mail Manual ("IMM"), which are incorporated by reference by 39 C.F.R. § 111.1 and 39 C.F.R. § 20.1 respectively.  Both manuals are available online at http://pe.usps.gov.  The IMM provides that Express Mail International shipments may be covered by merchandise insurance in case of loss, damage, or missing contents.  IMM § 222.71.  To process claims for insurance indemnification, the Postal Service has established a detailed administrative procedure, which is described in detail in sections 921, 922 and 931 of the IMM.

For International Express Mail, a postal customer seeking indemnification through postal insurance must submit an inquiry by calling the International Inquiry Center within ninety days of the date of mailing.  IMM § 921.2-3.  USPS will then "correspond with the foreign post and advise the customer of the result of the inquiry."  IMM § 921.4.  If the International Inquiry Center determines that an item was lost, it will provide the customer with a claim form.  *Id.*  To

determining whether exhaustion is required, federal courts must balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion.")  Courts have excused plaintiffs from exhausting administrative remedies where, for example, (1) there are "no facts in dispute," *Avocados Plus*, 370 F.3d at 1247 (citing *McKart v. United States*, 395 U.S. 185, 198 n.15 (1969)); (2) "the disputed issue [is] outside the agency's expertise," *id.* (citing *McKart*, 395 U.S. at 197-98); (3) "the agency may not have the authority to change its decision in a way that would satisfy the challenger's objections," *id.* (citing *McCarthy*, 503 U.S. at 147-48); (4) "requiring resort to the administrative process may prejudice the litigants' court action," *id.* (citing *McCarthy*, 503 U.S. at 146-47); or (5) the administrative process "may be inadequate because of agency bias." *Id.* (citing *McCarthy*, 503 U.S. at 148-49).

The USPS's regulations are set forth in its Domestic Mail Manual ("DMM") and its International Mail Manual ("IMM"), which are incorporated by reference by 39 C.F.R. § 111.1 and 39 C.F.R. § 20.1 respectively.  Both manuals are available online at http://pe.usps.gov.  The IMM provides that Express Mail International shipments may be covered by merchandise insurance in case of loss, damage, or missing contents.  IMM § 222.71.  To process claims for insurance indemnification, the Postal Service has established a detailed administrative procedure, which is described in detail in sections 921, 922 and 931 of the IMM.

For International Express Mail, a postal customer seeking indemnification through postal insurance must submit an inquiry by calling the International Inquiry Center within ninety days of the date of mailing.  IMM § 921.2-3.  USPS will then "correspond with the foreign post and advise the customer of the result of the inquiry."  IMM § 921.4.  If the International Inquiry Center determines that an item was lost, it will provide the customer with a claim form.  *Id.*  To

support a claim, the customer is required to show evidence of coverage and evidence of the value of the lost items. IMM § 921.31-32. The IMM provides various examples of "acceptable evidence" to establish the value of the lost item, including the following:

1. Sales receipt, invoice, or statement of value from a reputable dealer.
2. Customer's own statement describing the lost or damaged article, including the date and place of purchase, the amount paid, and whether new or used (only if a sales receipt, invoice, or statement of value from a reputable dealer is not available). . . . The statement must describe the article in enough detail to determine whether the value claimed is accurate.
3. Picture from a catalog showing the value of a similar article (only if a sales receipt, invoice, or statement of value from a reputable dealer is not available). The date and place of purchase must be included. . . .

*Id.* § 922.32. A customer may appeal a decision on his or her claim by filing an appeal within sixty days of the date of the original decision with the International Claims Appeals Accounting Services. IMM § 931.31. If the manager of International Claims Appeals Accounting Services sustains the denial of a claim, the customer may submit an additional appeal within 60 days for final review and decision to the Consumer Advocate of International Claim Appeals. IMM § 931.32.

Here, Mr. Dosso complied with the first step of the USPS administrative process detailed in the IMM by calling the International Inquiry Center. (Woody Decl. ¶7.) In response to his inquiry, the Postal Service discovered that its records did not reflect any delivery or receipt of the item Mr. Dosso sent on August 3, 2010. (*Id.*) The Postal Service then informed Mr. Dosso that his claim could not be processed until he provided evidence of the value of the lost laptop. (Feb. 18, 2010 letter, Woody Decl. Ex. B.) The February 18 letter explained that to process the claim, the Postal Service would need "a dated sales receipt, invoice, credit card statement or proof of completed internet payment transaction." (*Id.*) "In this case," the letter continued, "you indicated you do not have the original purchase receipt. Please provide a website print out of the

kind of computers showing value, with a signed statement indicating reason for non receipt."
(*Id.*)

This request for evidence of value is consistent with § 922.32 of the IMM, quoted above, which describes the types of evidence the Postal Service may demand to establish the value of an allegedly lost item. Mr. Dosso did not respond to the request, and did not provide evidence of the value of the lost laptop. (Woody Decl. ¶7.) By failing to provide evidence of value as required by IMM § 922.32 before filing this lawsuit, he failed to exhaust administrative remedies.

Having failed to exhaust administrative remedies, Mr. Dosso argues that he should be excused from the exhaustion requirement for three reasons. First, he argues that the government now has sufficient information to process his claim, because he submitted a declaration, attached to his response to the Postal Service's motion to dismiss, in which he describes the lost item. This argument is unavailing, however, because he provided the declaration after filing this lawsuit, and filed it along with his response to the motion to dismiss. The declaration, therefore, does not cure his failure to exhaust administrative remedies *before* filing this lawsuit. *See Volvo GM Heavy Truck Corp.*, 118 F.3d at 209 (requiring exhaustion "*before* seeking relief from the federal courts") (emphasis added).

Second, Mr. Dosso claims that he never received a letter with the Postal Service's final decision on his claim. (Pl.'s Opp'n at 4; Dosso Decl. ¶5.) He concedes, however, that he did receive a "claim form" and that he had numerous phone conversations with employees of the Postal Service concerning his claim. (Dosso Decl. ¶¶4-6.) While it is unclear whether the "claim form" he received explained that he could satisfy the evidence-of-value requirement by means other than the original receipt, he acknowledged receiving a letter from the government,

6

dated October 5, 2010, which reiterated, in bold type, "Mr. Dosso, if you provide me with a website print out of the kind of computer showing its value and a signed statement indicating the reason why you do not have the original purchase receipt, I will send these items to USPS directly and it is possible that your claim may still be adjudicated." (Letter from AUSA Melanie Glickson to Maurice Dosso (Oct. 5, 2010), Def.'s Reply, Ex. 1; Email from Maurice Dosso to AUSA Melanie Glickson (Oct. 8, 2010).)

Third, Mr. Dosso argues that he did not have notice of the administrative procedures required by the IMM. The IMM, however, is incorporated by reference into the Code of Federal Regulations, and thereby is deemed published. 5 U.S.C. § 552(a)(1) ("[M]atter reasonably available to the class of persons affected thereby is deemed published in the Federal Register when incorporated by reference therein.") Moreover, the IMM is available online, and the government has explained to Mr. Dosso that so long as he provides some documentation of the value of an item comparable to the lost laptop, the Postal Service will consider his claim for indemnification. (*See* Feb. 18, 2010 letter, Woody Decl. Ex. B; Woody Decl. ¶7.) Therefore, his contention that he was not aware of the requirements of the IMM does not merit excusal from the exhaustion requirement.

Moreover, none of these three arguments fall within a recognized exception to the general rule that parties are required to exhaust administrative remedies before challenging an agency action in court. The value of the lost item is at issue, and thus the exception where "no facts [are] in dispute," *see Avocados Plus*, 370 F.3d at 1247, does not apply. The value of the item is not "outside the agency's expertise." *Cf. id.* (citing an exception where "the disputed issue may be outside the agency's expertise"). There is also no contention that "the agency may not have the authority to change its decision in a way that would satisfy the challenger's objections," that

"requiring resort to the administrative process may prejudice the litigants' court action," or that the administrative process "may be inadequate because of agency bias." *See id.* The Postal Service's claims procedure provides the agency "with an opportunity to correct its own mistakes with respect to programs it administers before it is haled into federal court" and avoids "piecemeal appeals," *see Volvo GM Heavy Truck Corp.*, 118 F.3d at 209, the two principal considerations underlying the exhaustion requirement. Given Mr. Dosso's failure to provide any documentation of the value of a computer comparable to the one that was allegedly lost in the mail, as repeatedly requested by the Postal Service, there is no reason why, in the circumstances present here, "the interest of the individual in retaining prompt access to a federal judicial forum" outweighs the "countervailing institutional interests favoring exhaustion." *See id.*; *see also Djordjevic v. Postmaster General*, 911 F. Supp. 72, 75-76 (E.D.N.Y. 1995) (dismissing claim for indemnification because the plaintiff had not "completed the administrative process prescribed by the Postal Service for receiving indemnity claims for Express Mail").

For these reasons, Mr. Dosso has failed to exhaust admininistrative remedies, and his complaint will be dismissed.[3]

---

[3] Mr. Dosso has sued the Postal Service for breach of contract. For the reasons discussed above, his claim will be dismissed for failure to exhaust administrative remedies. In addition, if Mr. Dosso were to have alleged a tort claim, it would be barred by the doctrine of sovereign immunity. As a sovereign, the United States "is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Testan*, 424 U.S. 392, 399 (1976) (internal quotations omitted). Where the conditions under which the government has agreed to waive its sovereign immunity have not been met, federal subject matter jurisdiction does not exist. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Congress has waived sovereign immunity for certain tort claims through the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 1402, 2401(b), 2671 *et seq*. Under 28 U.S.C. § 2680(b), however, the United States does not waive its sovereign immunity with regard to "any claim arising out of the loss, miscarriage, or negligent transmission of letters or postal matter." Therefore, to the extent that the plaintiff's claim sounds in tort, it is barred by the doctrine of sovereign immunity and will be dismissed for lack of subject matter jurisdiction.

## **CONCLUSION**

For the foregoing reasons, the defendant's motion to dismiss will be granted.

November 24, 2010         /s/
Date        Catherine C. Blake
       United States District Judge